1    UNITED STATES DISTRICT COURT

2    NORTHERN DISTRICT OF NEW YORK

3    ----------------------------------------------------------

4    UNITED STATES OF AMERICA,

5              -versus-                    15-CR-261

6    RYAN ROOT.

7    ----------------------------------------------------------

8              TRANSCRIPT OF CHANGE OF PLEA

9    held in and for the United States District Court, Northern

10   District of New York, at the Federal Building, 15 Henry St.,

11   Binghamton, New York, on November 30, 2016, before

12   the HON. THOMAS J. McAVOY, Senior United States District

13   Court Judge, PRESIDING, via VIDEO-CONFERENCE.

14

15   APPEARANCES:

16   FOR THE GOVERNMENT:

17   UNITED STATES ATTORNEY'S OFFICE

18   BY:  SOLOMON SHINEROCK, AUSA

19        Albany, New York

20

21   FOR THE DEFENDANT:

22   BATTISTI & GARZO

23   FRANCIS P. BATTISTA, ESQ.

24   Binghamton, New York

25

USA vs Ryan Root

1              THE CLERK:  United States of America versus Ryan T.

2     Root, 15-CR-261.  May I have the appearance for the

3     government?

4              MR. SHINEROCK:  Solomon Shinerock on behalf of the

5     United States.

6              THE COURT:  Good afternoon, Mr. Shinerock.

7              THE CLERK:  On behalf of the defendant, please.

8              MR. BATTISTI:  Paul Battisti on behalf of Mr. Root.

9              THE COURT:  Good afternoon, Mr. Battisti; good

10    afternoon, Mr. Root.

11             THE DEFENDANT:  Good afternoon, your Honor.

12             THE CLERK:  Mr. Root, will you raise your right

13    hand, please.

14                 (Defendant was duly sworn)

15             THE COURT:  All right.  Mr. Battisti, as I

16    understand it your client, Mr. Root, wishes to change his

17    plea and enter a plea of guilty to a one, to counts one and

18    two of indictment 15-CR-261 and admit to the allegations in

19    the forfeiture clause.

20                 Is that right?

21             MR. BATTISTI:  That's correct, your Honor.

22             THE COURT:  Is that your understanding,

23    Mr. Shinerock?

24             MR. SHINEROCK:  It is.

25             THE COURT:  All right.  Would you like to have the

USA vs Ryan Root

1    forfeiture allegations read or would you like to waive the

2    reading?

3              MR. BATTISTI:  We do waive the reading, your Honor.

4              THE COURT:  All right.  Mr. Root, in a few moments

5    I'm going to be asking you some questions in order to learn

6    if you're pleading guilty freely and voluntarily with an

7    understanding of the charge and the consequences.  I'm going

8    to be asking you if you're under the influence of any

9    substances such as alcohol, narcotics or medication which

10   would in any way interfere with your ability to understand

11   the charges and the consequences.  I'm going to be asking you

12   if anybody has made any promises of leniency to you to induce

13   you to plead guilty, except what's in your plea agreement, or

14   if anybody has threatened you with the use of force to induce

15   you to plead guilty.

16             I'm going to be asking you something about

17   what you did in this case so the Court can establish that

18   there's a factual basis for accepting and entering your plea

19   and I'm going to ask you some questions about your personal

20   history and background and I want to advise you if your

21   answers are not truthful, they may later be used against you

22   in a prosecution for perjury or for making a false statement.

23             Do you understand that?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Okay.  Before I ask you those questions

USA vs Ryan Root

1  and before the clerk takes your plea, I have to advise you of

2  certain rights that you have in connection with this matter.

3  First of all, you have the right to persist in your original

4  plea of not guilty as to all counts in the indictment.  You

5  have the right to a speedy and a public trial by an impartial

6  jury of 12 persons or to a trial by the Court alone if you

7  were to waive or give up your right to a jury trial.

8           Upon such a trial you would be presumed to be

9  innocent under the law and the burden would be upon the

10 government to establish your guilt beyond a reasonable doubt

11 to the satisfaction of all 12 jurors or to the satisfaction

12 of the Court if you waived a jury trial.

13          At such a trial you'd have the right to the

14 assistance of an attorney.  You'd have the right to confront,

15 that is, to see and hear anyone testifying against you.

16 You'd have the right to remain silent or to testify in your

17 own behalf but you couldn't be compelled to incriminate

18 yourself or to testify at all and your silence couldn't be

19 held against you in any way nor could any inferences of guilt

20 be drawn against if you decided not to testify.

21          You'd have the right to use the subpoena or

22 other process of the Court, to compel witnesses to attend the

23 trial and testify and to contain any documentary or other

24 evidence you might wish to offer in your own defense.

25          Now, if the Court accepts your plea of guilty

USA vs Ryan Root

1   here this afternoon, you're going to waive or give up all

2   those rights, there won't be a trial of any kind and the

3   Court will have the same power to sentence you as if you had

4   been found guilty after a trial on the counts to which you're

5   pleading.

6              Now, have you talked to Mr. Battisti about the

7   meaning of the charges made against you in count one and

8   count two?

9              THE DEFENDANT:  Oh, yes.  Yes, I have.

10             THE COURT:  And did he explain to you in count one

11  you're being charged with having been a member of a

12  conspiracy whose object it was to possess with intent to

13  distribute and to distribute a controlled substance, anabolic

14  steroids.

15             Do you understand that charge?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  And count two is a money laundering

18  charge which charges you with having conspired to transport,

19  transmit and transfer and attempt to do the same, monetary

20  instruments from a place in the United States through a place

21  outside the United States, with the intent to promote and

22  carry on the conspiracy that I just talked to you about.

23             Do you understand that charge?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Did Mr. Battisti talk to you about the

USA vs Ryan Root

1    potential sentences or the consequences of pleading guilty?

2              MR. BATTISTI:  Yes, your Honor.

3              THE COURT:  Do you understand those?

4              THE DEFENDANT:  Yes, I do.

5              THE COURT:  Did he also talk to you about your

6    chances of winning or losing if you went to trial, trial

7    strategy and defenses?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  Lastly, I want to advise you that your

10   plea of guilty constitutes a waiver or giving up of your

11   right against self-incrimination and I want to warn you not

12   to plead guilty unless you're, in fact, guilty of the charges

13   made against you in counts one and two of the indictment.

14              Do you still wish to plead guilty?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  Madam clerk.

17             THE CLERK:  Indictment 15-CR-261, the grand jury

18   charges count one:  From in or around January 2011, through

19   on or about September 11, 2015, in Broome County, in the

20   Northern District of New York and elsewhere, the defendant,

21   Ryan T. Root, and other defendants named therein, conspired

22   with others to knowingly and intentionally possess with

23   intent to distribute and to distribute controlled substances,

24   in violation of Title 21, United States Code, Sections

25   841(a)(1) and 846.  As to all defendants, that violation

1  involved anabolic steroids, Schedule III controlled

2  substances, in violation of Title 21, United States Code,

3  Section 841(b)(1)(E).

4                    Mr. Root, how do you plead to count one of

5  indictment 15-CR-261?

6                    THE DEFENDANT:  Guilty.

7                    THE CLERK:  Count two, from in or around January

8  2011 through on or about September 11, 2015, in Broome

9  County, in the Northern District of New York and elsewhere,

10  the defendant, Ryan Root, and other defendants named

11  therein, and others, conspired to transport, transmit and

12  transfer and attempt to transport, transmit and transfer one

13  or more monetary instruments and funds from a place in the

14  United States to and through a place outside the United

15  States with the intent to promote the carrying on of

16  specified unlawful activity; that is, conspiracy to possess

17  with intent to distribute controlled substances, in violation

18  of Title 21, United States Code, Sections 846 and 841(a), in

19  violation of Title 18, United States Code, Section

20  1956(a)(2)(A).  All, in violation of Title 18, United States

21  Code Section, 1956(h).

22                    Mr. Root, how do you plead to count two of

23  indictment 15-CR-261?

24                    THE DEFENDANT:  Guilty, ma'am.

25                    THE CLERK:  And, Mr. Root, do you admit to the

USA vs Ryan Root

 1  forfeiture allegation contained and set forth in indictment

 2  15-CR-261?

 3            THE DEFENDANT:  Yes.

 4            THE COURT:  All right.  Mr. Root, would you state

 5  your full name for us once again?

 6            THE DEFENDANT:  Ryan Timothy Root.

 7            THE COURT:  How old are you?

 8            THE DEFENDANT:  Thirty-seven.

 9            THE COURT:  What's your date of birth?

10            THE DEFENDANT:  12/20/78.

11            THE COURT:  Are you married?

12            THE DEFENDANT:  No, your Honor.

13            THE COURT:  Do you have any children?

14            THE DEFENDANT:  No, your Honor.

15            THE COURT:  How far did you go in school?

16            THE DEFENDANT:  I went to -- my bachelor's degree

17  in biochemistry.

18            THE COURT:  Where did you get that?

19            THE DEFENDANT:  Binghamton University.

20            THE COURT:  And what kind of work have you done

21  over the years?

22            THE DEFENDANT:  I worked in the emergency room at

23  Lourdes here in Binghamton.  I've been -- I worked for a

24  plumber.  I was a plumber for a while in my early 20s while I

25  was going to school and then now I own my own business.

USA vs Ryan Root

1           THE COURT:  Have you had any alcohol or narcotics

2   in the past 48 hours?

3           THE DEFENDANT:  No, your Honor.

4           THE COURT:  Are you currently or have you recently

5   been under the care of any physician, psychiatrist or other

6   medical care provider for any physical or mental condition?

7           THE DEFENDANT:  No, your Honor.

8           THE COURT:  Are you taking any medication at the

9   present time?

10          THE DEFENDANT:  I'm taking testosterone.

11  Prescription.

12          THE COURT:  How much do you take; how many

13  milligrams a day?

14          THE DEFENDANT:  I take one milliliter a week.

15          THE COURT:  Milliliter a week, right?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And is that in any way interfering with

18  your ability to understand the charges and the consequences?

19          THE DEFENDANT:  No, sir.

20          THE COURT:  Okay.  Has Mr. Battisti advised you of

21  your rights?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Is there anything you'd like to ask me

24  about your rights this afternoon?

25          THE DEFENDANT:  No, your Honor.

1          THE COURT:  Are you satisfied with what
2   Mr. Battisti has done for you so far?
3          THE DEFENDANT:  Yes, your Honor.
4          THE COURT:  Has Mr. Battisti or Mr. Shinerock or
5   any public official or anyone made any promises to you that
6   you'd be treated leniently in exchange for your plea of
7   guilty, except what's in your plea agreement?
8          THE DEFENDANT:  No, your Honor.
9          THE COURT:  Has anybody threatened you with the use
10  of force to induce you to plead guilty?
11         THE DEFENDANT:  No, your Honor.
12         THE COURT:  Are you pleading guilty freely and
13  voluntarily?
14         THE DEFENDANT:  Yes, your Honor.
15         THE COURT:  Are you currently on probation or
16  parole from any other institution?
17         THE DEFENDANT:  No, your Honor.
18         THE COURT:  All right.  Mr. Shinerock, does the
19  government have sufficient evidence to prove Mr. Root guilty
20  beyond a reasonable doubt of the charges in count one and two
21  of the indictment?
22         MR. SHINEROCK:  We do, your Honor.
23         THE COURT:  What would you prove if we went to
24  trial?
25         MR. SHINEROCK:  In proving count one the government

USA vs Ryan Root

1   would be required to show beyond a reasonable doubt that two

2   or more persons conspired to knowingly or intentionally

3   distribute or possess with intent to distribute a controlled

4   substance.

5           Second, that the defendant joined that

6   conspiracy either at its inception or some time during its

7   existence knowing its purpose and intending to help it

8   succeed.

9           And finally, that conspiracy involved the

10  distribution or possession with intent to distribute anabolic

11  steroids, a Schedule III controlled substance.

12          In establishing a conviction on count two the

13  government would be required to show, first, that two or more

14  persons conspired to transport, transmit and transfer and

15  attempt to transport, transmit and transfer one or more

16  monetary instruments and funds from a place in the United

17  States to and through a place outside the United States, with

18  the intent to promote the carrying on of specified unlawful

19  activity; that is, the conspiracy to possess with intent to

20  distribute controlled substances as charged in count one.

21          Second, the government would have to show that

22  the defendant joined that conspiracy either at its inception

23  or some time during its existence knowing its purpose and

24  intending to help it succeed.

25          In establishing these elements the government

USA vs Ryan Root

 1   would show that between January 2011 and September 2015, in

 2   the Northern District of New York, in the district of New

 3   Jersey and elsewhere, the defendant conspired with nine

 4   co-defendants charged in count one and others to possess with

 5   intent to distribute and distribute 60,000 units or more of

 6   anabolic steroids.

 7              As part of this conspiracy the defendant would

 8   arrange for the shipment to himself or other co-conspirators

 9   acting on his behalf of distribution amounts of anabolic

10   steroids from different sources of supply in China and

11   elsewhere throughout the world.  The defendant would ship or

12   direct other co-conspirators to ship the anabolic steroids to

13   various parts of the United States, including to the Northern

14   District of New York.

15              The defendant admits that as a result of his

16   participation in the anabolic steroid conspiracy as charged

17   in count one of the indictment, he is personally responsible

18   for the possession with intent to distribute more than 60,000

19   units of anabolic steroids.

20              We'd also show that it was further a part of

21   the conspiracy that to obtain the anabolic steroids shipped

22   to him or to his co-conspirators, that the defendant wired

23   funds or caused other co-conspirators to wire funds from the

24   Northern District of New York and elsewhere in the United

25   States to counter parties in China using commercially

 1   available wire transfer services, including Western Union.

 2   The defendant knew that the funds he and other

 3   co-conspirators wired to counter parties in China were used

 4   to promote the carrying on of the conspiracy to possess with

 5   intent to distribute anabolic steroids.  And as a result of

 6   his participation in the international money laundering

 7   conspiracy as charged in count two, the defendant we would

 8   show he is responsible for $252,818.00 in that he personally

 9   laundered that amount and the laundering of the amount by

10   others was reasonably foreseeable to him.

11              THE COURT:  All right.  Mr. Root, did you hear and

12   understand what Mr. Shinerock said about your conduct in this

13   case?

14              THE DEFENDANT:  Yes, your Honor.

15              THE COURT:  Is that what you did?

16              THE DEFENDANT:  Yes, your Honor.

17              THE COURT:  Is that your understanding,

18   Mr. Battisti?

19              MR. BATTISTI:  I'm sorry, Judge, you broke up there

20   for a minute.  What was that?

21              THE COURT:  Is it your understanding that what

22   Mr. Shinerock said about your client's conduct was, in fact,

23   what he did in this case?

24              MR. BATTISTI:  That's correct, your Honor.

25              THE COURT:  All right.  Mr. Shinerock, would you

USA vs Ryan Root

1   please advise the defendant and the Court what the maximum or

2   any minimum penalty would be for the counts involved?

3           MR. SHINEROCK:  On count one the defendant faces a

4   maximum penalty of ten years and on count two the maximum

5   penalty that could be imposed is 20 years of incarceration.

6   There's no mandatory minimum term of imprisonment in this

7   case.  There's a maximum statutory fine of $500,000 on count

8   one.  Count two carries a maximum statutory fine of the

9   greater of $500,000 or two times the amount of money involved

10  in the money laundering conspiracy, which in this case is

11  just slightly higher than the $500,000.

12          The defendant faces a term of supervised

13  release that must be imposed somewhere between two years and

14  life.  A violation of the terms of supervised release could

15  result in a term of additional incarceration for as long as

16  two years.

17          There's a special assessment in this case of

18  $100 for each count of conviction and there's a forfeiture

19  allegation to which the defendant has pled as part of the

20  plea agreement in the amount of $2.5 million.

21          If convicted the defendant faces collateral

22  consequences, including the loss of the right to vote, the

23  loss of the right to hold and bear arms, and the loss of the

24  right to hold certain professional licenses, as well as other

25  collateral consequences that he should discuss with his

```
 1   attorney and some of which are indicated in paragraph F of

 2   the plea agreement.

 3              THE COURT:  All right.  Mr. Root, did you sign your

 4   plea agreement in this case?

 5              THE DEFENDANT:  Yes, your Honor.

 6              THE COURT:  Let me ask you this first before I get

 7   to that.  Getting ahead of myself.

 8                   The Court also, in addition to what

 9   Mr. Shinerock told you, has to advise you that under and

10   pursuant to certain Sentencing Guidelines adopted by the

11   United States that used to be mandatory but are no longer

12   mandatory but still must be considered by the Court in the

13   sentencing process, that my discretion in sentencing you is

14   thereby affected and the Court must enforce the law as it

15   stands today but sometimes the Court can sentence you above

16   the guidelines or below the guidelines or even outside of the

17   guidelines depending upon the facts, the circumstances and

18   the law that's presented to the Court at or about the time of

19   sentencing.

20                   So, do you understand what I just said about

21   the sentencing guidelines?

22              THE DEFENDANT:  Yes, your Honor.

23              THE COURT:  Okay.  Did you sign your plea agreement

24   in this case?

25              THE DEFENDANT:  Yes, your Honor.
```

USA vs Ryan Root

1          THE COURT:  Did you talk it over with your attorney

2    before you signed it?

3          THE DEFENDANT:  Yes, I did, your Honor.

4          THE COURT:  Did he explain it to you?

5          THE DEFENDANT:  Yes, he did, your Honor.

6          THE COURT:  Did you understand it when you signed

7    it?

8          THE DEFENDANT:  Yes, I did, your Honor.

9          THE COURT:  Did you sign it voluntarily?

10         THE DEFENDANT:  Yes, I did, your Honor.

11         THE COURT:  In your plea agreement on page seven at

12   paragraph seven you've indicated to the Court that after

13   consultation with Mr. Batisti that both you and he agree that

14   it was -- that it's appropriate for you to waive or give up

15   certain appeal rights and in this particular case is the

16   right to appeal or collaterally attack your conviction

17   arising out of this proceeding today and also the right to

18   appeal or collaterally attack any sentence of 87 months or

19   less while retaining to yourself the right to appeal a higher

20   sentence.

21              So, did you understand what you were doing

22   when you agreed to give up those appeal rights?

23         THE DEFENDANT:  Yes, I did, your Honor.

24         THE COURT:  Did you do that voluntarily?

25         THE DEFENDANT:  Yes, I did, your Honor.

USA vs Ryan Root

1          THE COURT:  Mr. Battisti, did you sign the plea

2   agreement on behalf of Mr. Root knowingly and voluntarily?

3          MR. BATTISTI:  I did, your Honor.

4          THE COURT:  Mr. Shinerock, did you sign on behalf

5   of the government knowingly and voluntarily?

6          MR. SHINEROCK:  I did.

7          THE COURT:  All right.  Mr. Root, the Court also

8   has to advise you that it's not bound by any sentencing

9   recommendation contained in the plea agreement and you'll

10  have no right to withdraw your plea of guilty if the Court

11  decides not to enforce any voluntary agreement as part of the

12  plea agreement.  So, if the Court makes that decision and

13  will make the decision after it receives the Presentence

14  Investigation Report and any other materials that are sent to

15  the Court that bear on sentencing.

16              So, do you understand what I just said about

17  the Court's ability to reject any non-binding recommendation

18  in the plea agreement?

19          THE DEFENDANT:  Yes, I do, your Honor.

20          THE COURT:  Now that you've heard about the

21  potential statutory sentence and the guidelines, do you still

22  wish to plead guilty?

23          THE DEFENDANT:  Yes, I do, your Honor.

24          THE COURT:  Are you pleading guilty because you're

25  guilty?

USA vs Ryan Root

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Mr. Battisti, would you state your

3    background and experience in handling matters of this kind?

4          MR. BATTISTI:  Yes, your Honor.  For 12 years I've

5    been licensed to practice law in the State of New York and

6    for roughly six years I've been practicing in federal court

7    handling similar cases, similar facts, similar circumstances.

8    Surrounding this case I reviewed all the discovery.  I've had

9    meetings both face to face and by phone with the federal

10   prosecutor.  I've met with my client face to face and by way

11   of phone.  As of today's date I have roughly 45 hours into

12   this case.

13         THE COURT:  All right.  Have you had what you

14   believe to be adequate discovery of the government's case?

15         MR. BATTISTI:  We have.

16         THE COURT:  Have you advised Mr. Root of his

17   rights, the nature of the charge and the consequences of

18   pleading guilty?

19         MR. BATTISTI:  We have.

20         THE COURT:  Except what's contained in the plea

21   agreement, have you made any promises or threats to induce

22   him to plead guilty?

23         MR. BATTISTI:  I have not.

24         THE COURT:  Are you satisfied that he's pleading

25   guilty freely and voluntarily with an understanding of the

USA vs Ryan Root

1   charges and the consequences?

2           MR. BATTISTI:  I do.

3           THE COURT:  Do you know of any defenses that he has

4   that would prevail if the case went to trial?

5           MR. BATTISTI:  I do not.

6           THE COURT:  Do you know of any reason why he should

7   not plead guilty?

8           MR. BATTISTI:  I do not.

9           THE COURT:  Based on the foregoing the Court will

10  find that Mr. Root pled guilty freely and voluntarily; that

11  he is and was competent to enter such a plea; that he

12  understands the charges against him and the consequences of

13  pleading guilty; that there is and was a basis in fact for

14  the Court accepting and entering the plea.

15          The Court will direct the probation department

16  to prepare and submit a presentence report.

17          The Court will set sentencing for March 13,

18  2017 at 3 PM in Albany, New York.

19          Is there anything further from the government?

20          MR. SHINEROCK:  Nothing further.  Thank you.

21          THE COURT:  How about the defendant's counsel?

22          MR. BATTISTI:  Nothing further, Judge.  Thank you

23  very much.

24          THE DEFENDANT:  Thank you, your Honor.

25          THE COURT:  What's the bail situation?

USA vs Ryan Root

1          MR. BATTISTI:  Judge, he was released pretrial and

2     a resident of New Jersey.  There's been no violations.  He

3     appeared today voluntarily.  We'd request the Court continue

4     that pending sentencing.

5          MR. SHINEROCK:  No objection to that request.

6          THE COURT:  All right.  The Court will release

7     Mr. Root on the same terms and conditions to his New Jersey

8     probation supervisors.

9               Anything further?

10         MR. SHINEROCK:  Paul, if you could, just dropoff

11    the signed plea agreement page with Kathy Torres in the

12    US Attorney's Office there and she'll get it to me.

13         MR. BATTISTI:  Will do.  Okay.  Thank you.

14         THE COURT:  Court stands adjourned in this matter.

15              (Court stands adjourned)

16

17

18

19

20

21

22

23

24

25

```
 1                  CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4

 5            I, VICKY A. THELEMAN, Federal Official

 6   Realtime Court Reporter, in and for the United

 7   States District Court for the Northern District of

 8   New York, do hereby certify that pursuant to Section

 9   753, Title 28 United States Code that the foregoing

10   is a true and correct transcript of the

11   stenographically reported proceedings held in the

12   above-entitled matter and that the transcript page

13   format is in conformance with the regulations of the

14   Judicial Conference of the United States.

15

16

17                              /s/ Vicky A. Theleman

18                         VICKY A. THELEMAN, RPR, CRR

19                         US District Court - NDNY

20

21

22   Dated:  October 25, 2018.

23

24

25
```